UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Raphael Mendez,

          Plaintiff,

v.

Officer Joseph Peterson,

          Defendant.

Civ. No. 16-2644 (ADM/BRT)

**REPORT AND RECOMMENDATION**

Raphael Mendez, FMC Rochester, PMB 4000, Rochester, MN, *pro se* Plaintiff.

Erin M. Secord, Esq., United States Attorney's Office, counsel for Defendant.

BECKY R. THORSON, United States Magistrate Judge.

    *Pro se* Plaintiff Raphael Mendez alleges that he was wrongfully placed in the Segregated Housing Unit at FMC Rochester for one week after sending a threatening e-mail regarding a staff member, during which time he was "robbed of his personal properties." (Doc. No. 1, Compl. 4.) On August 29, 2017, United States District Judge Ann Montgomery adopted this Court's Report and Recommendation, which recommended that a motion to dismiss filed by all of the Defendants except one—Officer Joseph Peterson—be granted. (Doc. No. 50.)[1] Officer Peterson now moves to dismiss or for summary judgment. (Doc. No. 66.) For the reasons stated below, this Court

---

[1] The claims against Officer Thomas Dolan III, Lieutenant Dave Sladek, Chief Psychologist Dr. Jason Gabel, and Warden LeAnn LaRiva were dismissed with prejudice. (*See* Doc. No. 44, 6/26/17 Report and Recommendation ("R&R") 13.)

recommends that Officer Peterson's motion be addressed as a motion for summary judgment and be granted.[2]

## I. BACKGROUND

Plaintiff is currently incarcerated at FMC Rochester in Rochester, Minnesota. (Doc. No. 26, Declaration of Steve Stolarzyk ("Stolarzyk Decl.") ¶ 8.) Plaintiff was originally indicted in the U.S. Virgin Islands in 1990 for assault, possession of an unlicensed firearm during the commission of a violent crime, and possession of a firearm by a felon. *See Mendez v. Bureau of Prisons*, No. 08-CV-4971 (JMR/RLE), 2009 WL 3856925, at *1 (D. Minn. Nov. 17, 2009). After the Court found Plaintiff incompetent to stand trial, he was sent to the Federal Medical Center in Butner, North Carolina, for a period of restoration. *Id.* Plaintiff was not restored to competency, so in 1991, he was civilly committed under 18 U.S.C. § 4246 in the Eastern District of North Carolina. *Id.*[3]

### A. BOP Inmate Discipline Program

The Federal Bureau of Prisons' Inmate Discipline Program "helps ensure the safety, security, and orderly operation of correctional facilities, and the protection of the public, by allowing Bureau staff to impose sanctions on inmates who commit prohibited acts." 28 C.F.R. § 541.1; (*see* Stolarzyk Decl., Ex. A). Under this Program, the

---

[2] Since Defendants introduced facts outside of the pleadings, the simpler course of action is to treat the motion as a summary-judgment motion. Plaintiff does not argue that he is unable to "present facts essential to justify [his] opposition" to the summary-judgment motion. Fed. R. Civ. P. 56(d).

[3] Plaintiff is a frequent litigator in federal court. *See, e.g.*, *Mendez v. Haugen*, No. 14-cv-4792 (ADM/BRT), 2015 WL 5718967, at *6 (D. Minn. Sept. 29, 2015) (listing previous cases).

"discipline process starts when staff witness or reasonably believe" that an inmate "committed a prohibited act." 28 C.F.R. § 541.5(a). The inmate ordinarily receives a copy of an incident report within twenty-four hours of staff becoming aware of an incident. *Id.* After the inmate receives the incident report, a Bureau staff member will investigate it. *Id.* § 541.5(b).

Upon completion of the investigation, a Unit Discipline Committee ("UDC") will review the incident report. *Id.* § 541.7. UDC review, including a hearing, will ordinarily occur within five business days after the incident report is issued, excluding the day it was issued and any time the matter was referred for possible criminal prosecution. *Id.* § 541.7(c). The UDC can find the inmate did or did not commit the prohibited act(s) or refer the incident report to the Discipline Hearing Officer ("DHO") for further review, based on the seriousness of the prohibited act(s) charged. *Id.* § 541.7(a). If the UDC refers the incident report to the DHO for further review, the UDC will advise the inmate of his or her rights at a DHO hearing. *Id.* § 541.7(g).

At the DHO hearing, the inmate is given the opportunity to make a statement and to present witnesses and/or documentary evidence. *Id.* § 541.8(f). The DHO will determine whether the inmate did or did not commit the prohibited act(s) or refer the incident back to the UDC for further investigation, review, and disposition. *Id.* § 541.8(a). The inmate receives a written copy of the DHO's decision following the hearing. *Id.* § 541.8(h).

During the disciplinary process, if it appears that the inmate is mentally ill, the inmate will be examined by mental health staff to determine whether the inmate is

3

mentally competent to participate in the proceedings and whether the inmate is responsible for his or her conduct. *Id.* § 541.6. An inmate is not competent if he or she "lacks the ability to understand the disciplinary proceedings." (Stolarzyk Decl., Ex. A at 21.) An inmate is not responsible "if, at the time of the conduct, as a result of a severe mental disease or defect, he/she was unable to appreciate the nature and quality or the wrongfulness of his/her acts." (*Id.*); 28 C.F.R. §§ 541.6(a), (b). Typically, there is no hearing if the inmate is found not competent and/or not responsible. (Stolarzyk Decl. ¶ 6.)

### B. Incident Report Involving Threatening Email

Between July 22 and July 25, 2016, Plaintiff was having a disagreement with his workshop supervisor, Mr. Jacobson. (Compl. 2–3.) On July 25, Mr. Jacobson told Plaintiff he should take the day off. (*Id.* at 3.) Plaintiff then wrote an e-mail to his brother in which he stated that he would be quitting his job because the workshop supervisor was racist. (*Id.*; *see also* Doc. No. 1-1 at 3.) Plaintiff alleges that he "went on to tell my brother that I believe that racism is what got my boss Mr. Jacobson ran over (broken hip) and maybe they'll be back. Then I told my brother to tell Michael to send me some funds and I will pay Michael back when I get to the free world." (Compl. 3.)[4]

---

[4] The full text of the e-mail is as follows:

> Today I have decided to leave my job in the workshop because of negative management. He punishes me for good services and he allows me to work, without other benefits he gives to others in his workshop. I am the only one that gets to write on paper what I do for him. I am the only one he wants to assign when he wants good work done. And I am about the only one he bull shits regularly. I see racism in him. Greatly and I am refusing to work for any such like creature. Some one in the past has fuck him up probably over

(Footnote Continued on Next Page)

4

According to Incident Report No. 2876714, on July 25, 2016, at approximately 4:10 p.m., Officer Dolan, who was monitoring e-mails, noticed that Plaintiff wrote a threatening e-mail towards Mr. Jacobson. (Stolarzyk Decl. ¶ 10, Ex. D. at 1.) Officer Dolan wrote Plaintiff an incident report for violating Code 203, threatening a staff member. (*Id.*) Lieutenant Sladek delivered a copy of the incident report to Plaintiff on July 25, 2016, at 5:50 p.m. (Stolarzyk Decl. ¶ 11, Ex. D at 1.) Plaintiff was then placed in the Segregated Housing Unit ("SHU") on the same day, July 25, 2016. (Compl. 1, 4.) Lieutenant Sladek advised Plaintiff of his rights during the disciplinary process. (Stolarzyk Decl. ¶ 11, Ex. D at 2.) Plaintiff did not request witnesses or a staff representative at that time. (*Id.*) Lieutenant Sladek recommended that the incident report be referred to the UDC for a hearing. (*Id.*)

Because Plaintiff is civilly committed under § 4246, he was automatically referred by his Unit Team to Psychology for an evaluation of competency and responsibility.

---

(Footnote Continued from Previous Page)

> the same bull shit of his prejudicism [sic]. Its [sic] a white majority facility staffing that is seriously grounded on white support. No black in high office except maybe a safety guy. You can count the blacks here at FMC Rochester Minnesota with one hand. Its [sic] very racial.
>
> Maybe some body [sic] will finish his ass up right where they left off. He is broken, and a chain is only strong as its weakest link. I always say GOD don't like urgly [sic] but urgly [sic] still presist [sic] on being the best face to give. I do without. But keep me in mind and ask, Patrick brother Michael to provide me with what ever [sic]. I'll get him back in the free world. Also, I will have to give a copy of this e-mail to my congresswoman assignee. Its [sic] real serious.

(Doc. No. 1-1.)

5

(Stolarzyk Decl. ¶ 12, Ex. E at 1.) Dr. Gabel, FMC Rochester's Chief Psychologist, interviewed Plaintiff and noted that Plaintiff had a history of being preoccupied with delusional beliefs about conspiracies to keep him incarcerated. (*Id.*) Plaintiff was able, however, to engage in a meaningful conversation about his incident report and disciplinary process. (*Id.*) Dr. Gabel noted there were indications of grandiosity and at times Plaintiff's speech was pressured. (*Id.*) Further, Plaintiff admitted to writing the e-mails but did not believe they were a threat. (*Id.*) Due to these delusions, Dr. Gabel concluded that Plaintiff was not responsible for his threatening e-mail towards staff. (*Id.*)

On July 28, 2016, the UDC referred Incident Report No. 2876714 to the DHO with a recommendation that Plaintiff be found not responsible for his conduct based on the psychology evaluation. (Stolarzyk Decl. ¶ 13, Ex. D at 1–2.) No sanctions were recommended. (*Id.*) The DHO concurred with this recommendation, and on August 1, 2016, entered this finding into his disciplinary record. (Stolarzyk Decl. ¶ 14, Ex. C at 1.) The DHO did not impose any sanctions. (*Id.*) Plaintiff was released from the SHU on August 1, 2016. (Compl. 2, 4–5.)

      **C.**    **Allegations Relevant to Defendant Peterson**

Plaintiff alleges that Officer Peterson stole his personal belongings while he was in the SHU. (Doc. No. 6, Am. Compl. 3; Doc. No. 1-1 at 6.) Among the items reported stolen by Plaintiff were MP-3 players, a Sony radio, a headphone two-way adaptor, cream short pants, white crew socks, matching earrings and bracelet, two headbands, needles from a sewing kit, a manicure set, salt purchased from the commissary, a Black's Law Dictionary, a reading light, a blue pen, yellow and green highlighters, two kinds of

pencil sharpeners, a wireless notebook, and legal documents and court papers. (Doc. No. 1-1 at 6; Doc. No. 27, Declaration of Jake Bush ("Bush Decl."), Ex. B at 2–3.)

Plaintiff also alleges that all of the Defendants (including Peterson) should be considered "conspirators" for acting "directly or indirectly in secluding me and without bringing me before a mandatory DHO hearing for the High Severity Level prohibited Act 203 incident report of threatening a Mr. Jacobson." (Am. Compl. 4.)

### D.  Administrative Claim for Lost Property

On September 19, 2016, Plaintiff submitted an administrative claim under 31 U.S.C. § 3723(a)(1) for the allegedly stolen items. (Bush Decl. ¶¶ 5–6, Ex. A.) Plaintiff values his lost personal property at $203.75 and asserts that he is also missing legal documents valued at $9,796.25. (Bush Decl., ¶ 6, Ex. B at 1.) Plaintiff's claim was reviewed and denied. (Bush Decl. ¶¶ 6–7, Exs. B, C.)

## II.  DISCUSSION

Officer Peterson argues that Plaintiff's claims should be dismissed because they were pleaded as official capacity claims, not individual capacity claims. (Doc. No. 67, Defs.' Mem. in Supp. of Mot. to Dismiss or for Summ. J. ("Defs.' Mem.") 7–10.) As a result, Defendant argues, the Court lacks subject-matter jurisdiction because official capacity claims against federal employees are construed as claims against the United States, which is immune from suit. (*Id.*) Alternatively, Defendant asserts that Plaintiff's claims lack merit and that he is entitled to qualified immunity. (*Id.* at 12–17.)

### A. Standard of Review

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Thomas v. Heartland Emp't Servs., LLC*, 797 F.3d 527, 529 (8th Cir. 2015). The movant bears the initial burden of informing the court of the basis for its motion and identifying "those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2011). If it does so, the nonmoving party may not rest on mere allegations or denials, but instead "must present affirmative evidence" of "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials . . . ."). Where the evidence "could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is warranted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted).

### B. Sovereign Immunity

"Federal courts generally lack jurisdiction to hear claims against the United States because of sovereign immunity." *Barnes v. United States*, 448 F.3d 1065, 1066 (8th Cir. 2006). Claims that are brought against a federal official acting in his or her individual

capacity, generally known as *Bivens* claims, are not barred by sovereign immunity. *Buford v. Runyon*, 160 F.3d 1199, 1203 n.6 (8th Cir. 1998) ("A *Bivens* claim is a cause of action brought directly under the United States Constitution against a federal official acting in his or her individual capacity for violations of constitutionally protected rights.") (citing *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)). However, when claims are brought against a federal employee in his or her official capacity, the real party in interest is the United States, and sovereign immunity attaches. *Id.* at 1203.

If, as here, the complaint "is silent about the capacity in which [the plaintiff] is suing the defendant, [courts] interpret the complaint as including only official-capacity claims." *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995). Since Plaintiff's Complaint does not specify whether he is suing Officer Peterson in his official or individual capacity, his claims must be construed as raising only official capacity claims. *See Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("In actions against officers, specific pleading of individual capacity is required to put public officials on notice that they will be exposed to personal liability.").

Plaintiff's claims are therefore barred by sovereign immunity. Even so, this Court will address each claim that is arguably raised by Plaintiff's *pro se* Complaint. *See Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) ("When we say that a *pro se* complaint should be given liberal construction, we mean that if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way

9

that permits the layperson's claim to be considered within the proper legal framework."). They are without merit for the reasons that follow.

### C. Deprivation of Personal Property

Plaintiff appears to assert a due process claim in relation to his allegation that Officer Peterson stole his personal property while he was in the SHU. (Doc. No. 6, Am. Compl. 3; Doc. No. 1-1 at 6.) Plaintiff filed an administrative claim to recover his lost property under 31 U.S.C. § 3723(a)(1). (*See* Bush Decl. ¶¶ 5–6, Ex. A.) Plaintiff cannot state a due process claim because § 3723(a)(1) is an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (finding that the prisoner was barred from bringing a due process claim for property loss where there was an adequate post-deprivation remedy). Furthermore, to the extent that Plaintiff seeks review of the denial of his claim, "an agency's decision with respect to a claim under § 3723 is not subject to judicial review." *Edkins v. United States*, Civil Action No. 13-CV-14421, 2015 WL 871587, at *14 n.4 (E.D. Mich. Feb. 27, 2015).

### D. SHU Confinement

Plaintiff also appears to allege that his six-day SHU placement was a due process violation. The Supreme Court has held that prisoners have a liberty interest, protected by the Due Process Clause, in avoiding conditions of confinement that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

*Sandin v. Conner*, 515 U.S. 472, 484 (1995).[5] A "demotion to segregation, even without cause, is not itself an atypical and significant hardship." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (emphasis added). Instead, Plaintiff "must show some difference between his new conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship." *Id.*

A segregation stay that is "particularly lengthy" might meet this standard, but six days in segregated housing falls well short of what the Eighth Circuit considers "atypical and significant." *Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010); *see also Martin v. Hurley*, No. 1:13-CV-00048-SPM, 2015 WL 6750808, at *4 (E.D. Mo. Nov. 5, 2015). In *Martin*, for example, the prisoner-plaintiff spent thirty days in disciplinary segregation and 278 days in administrative segregation. 2015 WL 6750808, at *2. As the court explained in *Martin*, the "Eighth Circuit has held that confinement to disciplinary and/or administrative segregation, for time periods similar to (and even exceeding) the 308-day period at issue here, do not constitute an atypical and significant hardship that triggers due process protections." *Id.* at *4 (discussing *Orr* and *Hemphill v. Delo*, 124 F.3d 208 (8th Cir. 1997) (unpublished)). Thus, the short length of Plaintiff's stay does not constitute a hardship that as atypical or significant either. *See, e.g.*, *Bandy-Bey v. Crist*, 578 F.3d 763, 767 (8th Cir. 2009) (finding twenty-five days of disciplinary segregation

---

[5] While *Sandin* addressed due process claims under the Fourteenth Amendment, its reasoning also applies to Fifth Amendment due process claims brought by federal prisoners, such as Plaintiff, pursuant to *Bivens*. *See Miranda v. Martinez*, No. 13-CV-2739, 2014 WL 1383243, at *1 n.1 (W.D. La. Apr. 8, 2014) (citing *Crowder v. True*, 74 F.3d 812, 814–15 (7th Cir. 1996)); *Dusenberry v. Cerney*, Civil Action No. 1:07-CV-1869, 2008 WL 111271, at *2 (M.D. Penn. Jan. 8, 2008).

"did not offend a protected liberty interest"); *Portley-El v. Brill*, 288 F.3d 1063, 1065–66 (8th Cir. 2002) (finding thirty days of "punitive segregation" did not implicate a liberty interest).

In addition to its duration, courts also consider the conditions of segregated confinement to determine whether it constitutes a hardship that is atypical and significant. *See Wilkinson v. Austin*, 545 U.S. 209, 223–24 (2005). Plaintiff does not allege that the conditions of his confinement in the SHU were substandard, nor does he provide any evidence regarding those conditions. Ultimately, Plaintiff offers nothing to suggest that his six-day stay in the SHU was an atypical and significant hardship under well-established case law.

Plaintiff also appears to bring a procedural due process claim. Before an inmate can be deprived of a protected liberty or property interest, the inmate must receive (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *See Espinoza v. Peterson*, 283 F.3d 949, 952 (8th Cir. 2002) (citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)). This claim fails because Plaintiff's SHU confinement does not implicate a constitutionally-protected liberty interest. *See King v. Dingle*, 702 F. Supp. 2d 1049, 1075 (D. Minn. 2010) ("In prisoner cases, a constitutionally protected liberty interest will arise only when the prisoner can show that he has suffered an atypical and significant hardship in relation to the ordinary incidents of prison life.") (citing *Ragan v. Lynch*, 113 F.3d 875,

876 (8th Cir. 1997)); *Wilkinson*, 545 U.S. at 221 ("We need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest.").

### III.  RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion for Summary Judgment (Doc. No. 66) be **GRANTED**;

2. Plaintiff's claims against Officer James Peterson be **DISMISSED WITH PREJUDICE**; and

3. Judgment be entered accordingly.

Date: January 23, 2018.

*s/ Becky R. Thorson*_____
BECKY R. THORSON
United States Magistrate Judge

### NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).